UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MAGGIE KRIEGER, an individual, ) | |
| ) | |
| Plaintiff, ) | **CASE NO.** |
| v. ) | |
| ) | |
| MONEY NETWORK FINANCIAL, LLC ) | |
| a Delaware corporation ) | |
| d/b/a MONEY NETWORK, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DAMAGES UNDER
THE TELEPHONE CONSUMER PROTECTION ACT
- JURY DEMAND -**

1. This is an action for damages under 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA"). Defendant, Money Network Financial, LLC ("Money Network" or "Defendant"), bombarded Plaintiff with unwanted and unlawful text messages despite repeated requests to stop. To date, Plaintiff has received over 400 text messages in violation of the TCPA.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of over this matter under 28 U.S.C. § 1331 and 47 U.S.C. § 227. The TCPA is a federal statute.

3. Venue in this District is proper because, by directing the text messages at issue into this District, a substantial part of the events or omissions giving rise to the claim has therefore occurred here.

## PARTIES

4. Plaintiff, Maggie Krieger ("Mrs. Krieger" or "Plaintiff"), is a natural person and a citizen of the State of Florida, residing in St. Lucie County, Florida.

5. Defendant, Money Network, is a Delaware corporation whose principal place of business at 5565 Glenridge Connector, N.E., Atlanta, GA 30342 and whose registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

## A BRIEF OVERVIEW OF TEXT MESSAGING AND THE TCPA

6. "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted).

7. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

8. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS

message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

9. Recently, technology has progressed to where emails sent to a phone company can be converted to a text message and are subsequently received by consumers in that form. The Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, has concluded that "the equipment used to originate Internet-to-phone text messages to wireless numbers via email or via a wireless carrier's web portal is an 'automatic telephone dialing system' as defined in the TCPA, and therefore calls made using the equipment require consent." *Declaratory Ruling and Order*, FCC 15-72 (Released July 10, 2015).

10. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

11. According to findings by the FCC, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. See FCC Declaratory Ruling, 23 FCC Rcd at 565 (¶ 10).

13. A text message does not need to be advertisement to violate the TCPA. The TCPA does not regulate content. Instead, it regulates context—the time, place, or manner of communication. *De Los Santos v. Millward Brown, Inc.*, *No. 13-80670-CV, 2014 WL 2938605, at \*4 (S.D. Fla. June 30, 2014)*.

14. The FCC specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In re SoundBite Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

15. In interpreting the "definition of automatic telephone dialing system," the FCC noted the basic function of such equipment was — "the *capacity* to dial numbers without human intervention." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd 14014, 14092. In doing so, it interpreted "automatic telephone dialing system" to include equipment that utilizes lists or databases of known, nonrandom telephone numbers. *See generally, Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011).

16. The FCC defines "spam" as unwanted messages to email accounts and

texts to mobile phones and other mobile devices. http://www.fcc.gov/guides/spam-unwanted-text-messages-and-email.

17. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed March 29, 2016).

18. The Eleventh Circuit has concluded that the FCC's orders regarding the TCPA are binding on the district courts under the Hobbs Act. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014); *See also,* 28 U.S.C. § 2342.

## FACTUAL ALLEGATIONS

19. Money Network provides paperless payroll and prepaid payment card services. It also offers payroll distribution services, and banking services. Money Network Financial, LLC operates as a subsidiary of First Data Corporation.

20. The frequently asked questions section of Defendant's website advertises: "Visit us online or call Customer Service to sign up for automatic daily or weekly balance updates sent via e-mail or directly to your mobile device via text message." (http://www.firstdata.com/moneynetwork/edudirect/faq/ Last accessed: March 29, 2016 at 4:39 PM).

21.     From approximately November of 2014 to December of 2015, Plaintiff received daily text messages from Defendant regarding an account balance for an account which belongs to someone else.

22.     Plaintiff did not consent to receiving Defendant's automated text message alerts. Plaintiff had no contact with Defendant prior to receiving the texts, and Plaintiff is unaware of how Defendant obtained her cellular phone number.

23.     Plaintiff's cellular phone shows that the text messages were sent from: CustomerService@Email.MoneyNetwork.com. All texts received were from the same sender and were similar to the exemplar below:



24. Plaintiff attempted to stop Defendant's text messages numerous times by sending a reply text stating "STOP" as the messages themselves advise; however, Defendant continued to send daily text messages until December 2015 when Plaintiff changed cellular phone carriers.

25. Defendant's text messages feature a domain name as the sender, rather than a telephone number or short code, which indicates that the text messages were sent by an Automated Telephone Dialing System, as discussed in the FCC's 2015 Order, *supra*.

26. Additionally, the identical content and daily transmission of each text message, as well as the failure to respond to reply text messages suggest use of an automated system which is programmed to send text messages and is not monitored by a live person.

## COUNT I

### NEGLIGENT AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

27. Plaintiff incorporates the foregoing paragraphs.

28. Defendant placed unwanted calls to Plaintiff using an automatic telephone dialing system.

29. The excessive calls were made without the prior express consent of the Plaintiff.

30. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

31. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor, and against Defendant for:

    a. Statutory damages of $500 for violations of the TCPA deemed to be negligent and damages of between $500 and $1,500 dollars per call for willful violations of the TCPA;

    b. Such further relief as this Court may deem appropriate.

## JURY DEMAND

32. Plaintiff demands trial by jury.

Dated: April 4, 2016

Respectfully submitted,

/s/ Scott D. Owens
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: (954) 589-0588
Fax: (954) 337-0666
Florida Bar No. 0597651
scott@scottdowens.com